UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOTERO ROSARIO,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO.<br>:   3-05CV00550 (JCH) |
| J.C. PENNEY,<br>    Defendant. | :<br>:<br>:   DECEMBER 16, 2005 |

**RULING ON PLAINTIFF'S MOTION TO DISMISS [Dkt. No. 5]**

Sotero Rosario ["Rosario"] brings an action against his former employer, J.C. Penney ["Penney"]. Penney filed the present Motion to Dismiss in response to Rosario's Complaint of March 31, 2005 [Dkt. No. 1], but has since amended its arguments in light of the Amended Complaint Rosario filed on August 19, 2005 [Dkt. No. 21]. See Def.'s Reply Br. Supp. Mot. Dismiss [Dkt. No. 27]. The court will therefore consider only those parts of Penney's motion that Penney continues to pursue following the Amended Complaint. J.C. Penney moves the court to dismiss Rosario's claims for Breach of Implied Contract (Count Six[1]), Promissory Estoppel (Count Seven), Negligent Supervision (Count Ten), Violation of Conn.Gen.Stat.§ 31-51 (part of Count Eleven[2]), False Imprisonment (Count Twelve), and Assault and Battery (Count Thirteen).

**I. STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests only the adequacy of the complaint.

---

[1] All count numbers refer to the Amended Complaint [Dkt. No. 21].

[2] Penney does not move to dismiss the second claim contained in Count Eleven, which alleges a violation of Conn.Gen.Stat. §§ 31-51m.

1

United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  Thus, such a motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A Rule 12(b)(6) motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).  "[W]hile bald assertions and conclusions of law will not suffice to state a claim, the district court, before granting a motion to dismiss, must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."  Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000) (internal citations omitted); see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

## II.  DISCUSSION

### A.  Breach of Implied Contract

The court denies the motion to dismiss Count Six, because Rosario has alleged that an implied contract existed not only as a result of the handbook that was given to all Penney employees,[3] but also as a result of other "words, conduct and/or actions" by Penney.  Amended Compl. ¶ 131.  It states that the terms of the implied contract were "set forth by, among other things, the Associate Handbook."  Id. at ¶ 132.  Even if the

---

[3]In support of Counts Six and Seven, Rosario cites handbook provisions dealing with the goals of the handbook and workplace harassment. Amended Compl.¶¶ 133, 141.

handbook, by itself, would not create an implied contract, viewing the allegations in Count Six as a whole, the court cannot find that the plaintiff has failed to state a claim upon which relief can be granted. The motion to dismiss this count is therefore denied, without prejudice to Penney to raise this argument again at summary judgment.

### B. Promissory Estoppel

In Count Seven, the Amended Complaint alleges that Penney made, and breached, certain promises to the defendant. Mirroring the allegations in Count Six, Count Seven states that Penney, "by its words, conduct and/or actions conducted business in a manner whereby" five specific promises were made. Amended Compl. ¶139. Moreover, it alleges that these promises were "reasonably expected to induce action or forbearance on the part of the Plaintiff," and did induce such action or forbearance, id. at ¶ 142, and that Rosario relied to his detriment, id. at ¶ 144, suffering substantial damages, id. at ¶ 146. Thus, Rosario alleges the facts necessary to state a claim under the promissory estoppel standard enunciated in D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.[4] 520 A.2d 217, 221 (Conn. 1987). Even if, as Penney argues, the handbook standing alone is not found to contain promises reasonably expected to induce action or forbearance by Rosario, and upon which his reliance was reasonable, other words, conduct and/or actions may be shown to cause these

---

[4]This standard requires "the existence of a clear and definite promise which a promisor could reasonably have expected to induce action or forebearance on the part of the promisee or a third person," and "which does induce such action or forbearance." D'Ulisse-Cupo, 520 A.2d at 221 (citing Restatement (Second) Contracts § 90 (1973)). It also requires a showing that "injustice can be avoided only by enforcement of the promise." Id. Even though the plaintiff has not specifically pled the last element, the allegations regarding Rosario's injuries, if proven, could support such a conclusion.

promises to become binding.  The motion to dismiss Count Seven is thus denied, without prejudice to Penney to revisit this issue on summary judgment.

### C. Negligent Supervision

To state a cause of action for negligent supervision, a plaintiff must plead, "that []he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct."  Roberts v. Circuit-Wise, Inc., 142 F.Supp.2d 211 (D.Conn. 2001) (citing Shanks v. Walker, 116 F.Supp.2d 311, 314 (D.Conn.2000)).

Penney argues that Rosario does not allege sufficient facts to support the foreseeability element of this rule.  However, the Amended Complaint, in contrast to the original, does state several reasons why Penney should have known that Rosario's superiors were likely to engage in the conduct alleged.  It alleges that Rosario repeatedly reported their behavior to Penney.  Amended Compl. ¶ 170.  Under the notice pleading standard of Rule 8(a), this allegation is sufficient to survive the motion to dismiss.

### D. Violation of Conn.Gen.Stat.§ 31-51[5]

---

[5]This statute states,

Any person, or any officer or agent of any corporation, company, firm, or the state or any political subdivision thereof, who blacklists any employee, mechanic or laborer, or publishes or causes to be published the name of any such employee, mechanic or laborer, with the intent and for the purpose of preventing such employee, mechanic or laborer from engaging in or securing employment from any other person, corporation, company, firm, or the state or any political subdivision thereof, or, in any manner, conspires or contrives, by correspondence or otherwise, to prevent such employee, mechanic or laborer from procuring employment, shall be fined not less than fifty and not more than two hundred dollars; but the provisions of this section shall not be construed so as to prohibit any person, or any officer or agent of

4

Conn. Gen. Stat. § 31-51 prevents employers from blacklisting employees. However, it explicitly does not prohibit employers "from giving a truthful statement of any facts" concerning an employee in response to a request for a reference. Id. The Amended Complaint alleges, "Defendant has provided prospective employers with negative references for Plaintiff, and/or has refused to provide a reference at all, thus preventing Plaintiff from securing employment in his field." Amended Compl. at ¶ 185. It does not allege that Penney made any untruthful statements. Cf. Chertkova v. Connecticut Gen. Life Ins. Co., No. CV980486346S, 2002 WL 1902988, at *6 (Conn.Super. July 12, 2002) (granting summary judgment to defendant on section 31-51 claim, where information was lacking as to whether information was truthful). Moreover, Rosario's argument that a refusal to provide a reference could be considered blacklisting under section 31-51 is unsupported.   The court grants the motion to dismiss the claim that Penney violated section 31-51, without prejudice to Rosario to replead.   It need not reach the issue of whether a private right of action exists under this statute.

### E. False Imprisonment and Assault and Battery

These claims arise out of confrontations between Rosario and two supervisors, which occurred at the workplace on June 15, 2005.  These actions all occurred shortly before, during, or shortly after one of the supervisors demanded that Rosario turn over his keys, Amended Compl. ¶ 48 [Dkt. No. 21], and stated that the phone in Rosario's

---

any corporation, company, firm, or the state or any political subdivision thereof, from giving a truthful statement of any facts concerning a present or former employee of such person, corporation, company, firm, or the state or any political subdivision thereof, on the application of such employee or of any person, or any officer or agent of any corporation, company, firm, or the state or any political subdivision thereof, who may be considering the employment of such employee.

office was for J.C. Penny employees only, id. at ¶ 53. Paragraph 70 of the Amended Complaint states that Rosario was suspended without pay on June 15, and terminated two days later.

The defendant argues that these claims are preempted by the Worker's Compensation Act (WCA). With certain exceptions, the WCA is the exclusive remedy for personal injuries arising out of and in the course of the injured party's employment. See Conn.Gen.Stat. § 31-284(a). The parties dispute whether the claims arose out of and occurred in the course of Rosario's employment, and whether the supervisors who are alleged to have falsely imprisoned, assaulted, and battered Rosario are "alter ego's" of Penney.

The WCA covers only claims that (1) arise out of the plaintiff's employment and (2) occur "in the course of the employment within the meaning of [Conn.Gen.Stat.] § 31-275(1)." Herman v. Sherwood Indus., Inc., 710 A.2d 1338, 1339 (Conn.1998) (holding that a claim by an employee who injured his back while retrieving belongings from the employer's loading dock shortly after termination was covered by the WCA). "The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and circumstances of the accident." Id. (internal citation and quotation marks omitted).

Beginning with the second requirement, "[a]n injury occurs in the course of the employment if it takes place: (1) within the period of the employment; (2) at a place the employee reasonably may be; and (3) while the employee reasonably is fulfilling the duties of the employment or doing something incidental to it." Herman, 710 A.2d at 1340. With regard to the first prong, "a claimant is entitled to workers' compensation for

an injury that was incurred while leaving the job site immediately after the termination of his or her employment." Id. at 1341. Thus, regardless of whether Rosario was still employed at the time of the alleged torts, or if he had just been terminated or suspended, his injuries occurred within the period of employment. As in Herman, the second prong of this test is not disputed, because the alleged torts occurred at the place where Rosario worked. See id. The third prong is more difficult to decide at this stage in the litigation. Some of Rosario's actions during the time of the alleged torts, such as retrieving his belongings, were certainly incident to his employment. However, the exchange with his supervisors, under the facts alleged, may also have included some activities not incident to his employment. For example, the allegations that a supervisor demanded that Rosario hand over his keys and refused to let him use an office phone because it was only for J.C. Penney employees could indicate that the dispute arose while Rosario was being terminated, an activity not incident to employment under Connecticut law. See Fulco v. Norwich Roman Catholic Diocesan Corp., 609 A.2d 1034, 1038 (Conn.App. 1992), appeal dismissed, 627 A.2d 931 (Conn. 1993) (holding that being discharged is not "regularly engaged in as incident to employment") (internal citations omitted). Thus, Rosario may be able to prove that his injuries did not occur in the course of his employment. On this ground alone, the court concludes that the factual allegations state causes of action that are not preempted by the WCA. The court need not reach the issue of whether the injuries "arose out of" Rosario's employment or whether the supervisors who committed the intentional torts

were alter egos of Penney.[6]  The court denies Penney's motion to dismiss the claims for false imprisonment and assault and battery, without prejudice to Penney to raise these claims at summary judgment.

## III.  CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Penney's Motion to Dismiss [**Dkt. No. 5**].  The court denies the motion to dismiss with respect to Counts Six, Seven, Ten, Twelve and Thirteen of the Amended Complaint.  It grants the motion to dismiss with regard to the alleged violation of Conn.Gen.Stat. § 31-51, part of Count Eleven of the Amended Complaint, without prejudice.


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of December, 2005.


                                        /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge

---

[6]The Connecticut Supreme Court has recognized an exception to the WCA exclusivity provision for intentional torts committed by individuals "of such rank in the corporation that [they] may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." Jett v. Dunlap, 425 A.2d 1263, 1265 (Conn. 1979);  Suarez v. Dickmont Plastics Corp., 698 A.2d 838, 841 (Conn. 1997) (quoting Jett and holding that the rule does not extend to individuals merely cloaked with "apparent authority").